THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HENRY MICHAEL CHRIEST, Defendant-Appellant.

Fifth District   No. 76-11

Opinion filed September 23, 1976.

EBERSPACHER, J., dissenting.

Richard B. Caifano, of Chicago, for appellant.

Robert H. Howerton, State's Attorney, of Marion (Bruce D. Irish and Raymond F. Buckley, Jr., both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE JONES delivered the opinion of the court:

Defendant, Henry Michael Chriest, was indicted for the April 6, 1975, burglary of and theft from the Karr Drug Company in Herrin, Illinois. Defendant filed a motion to suppress certain evidence that had been seized from a van in which defendant had been a passenger at the time of his arrest. The evidence consisted of a large quantity of drugs that had been taken during the burglary of the Karr Drug Company. A hearing was held on defendant's motion to suppress, and the motion was denied. The case then proceeded to trial before a jury; and defendant was found guilty of both burglary and theft. Subsequently, the trial court dismissed the charge of theft and imposed a sentence of imprisonment of from two to 20 years on the burglary conviction. Defendant has appealed and raises three issues.

Defendant's first contention on this appeal is that the trial court erred in denying defendant's motion to suppress the drugs seized from the van in which defendant had been a passenger. The hearing on defendant's motion to suppress was held on June 26, 1975. The testimony at the hearing showed the following.

During the evening of April 8, 1975, Carl Kirk, a security officer at Southern Illinois University at Carbondale, received a telephone call from a confidential informer concerning certain drugs that had been stolen two days earlier during a burglary of the Karr Drug Company. Following the telephone call Kirk met with the informer personally in Herrin, Illinois. Kirk had known the informant for three or four months as of that date. The informant had previously supplied Kirk and other officers information on "somewhere between eight and fifteen cases," and had also "helped in the purchase of other controlled substances and narcotics." Upon analyzation of the drugs previously purchased, "[t]he report came back from the crime lab that the drugs were as purported being controlled substances." As of April 1975, no arrests had been made or court action taken as a result of information that had been supplied by the confidential informer; but that information had been used as an "investigative tool" by the police.

The informant told Kirk that defendant had the drugs which had been taken from the Karr Drug Company and that the drugs were in a paper grocery bag that "had a tear in it." The informant's information had been obtained "between the informant and Chriest." The informant indicated that he had "seen and observed" the bag containing the drugs in a van in which defendant was to be a passenger. The van was described as a white, International van, with the "engine out in front" and with "windows around the side." The van was to be at either of two named taverns in Herrin, Illinois later that evening.

As a result of this information, a surveillance team was organized. Two

members of the surveillance team went to the two named taverns, but they were unable to find defendant or the van at either place. However, while Kirk was driving in Herrin later that evening, he saw the white, "Travel-all" type van described earlier by the informant parked along a street. As the van began to move, Kirk contacted the other members of the surveillance group and followed the van. As he followed, Kirk saw that the defendant, whom Kirk was able to recognize, was a passenger in the vehicle.

Kirk and other members of the surveillance team following the van to Marion, where it stopped at a Dairy Queen. One of the drug agents in the surveillance group, Agent McClain, approached the van, talked with the driver of the van and defendant, and then returned to his car. (Apparently the van occupants were unaware that the man was a drug enforcement agent.) Thereafter, McClain drove his car and the driver of the van drove that vehicle to a nearby service station. There McClain entered the van and, apparently, spoke with the driver of the van and defendant and then left the van. After McClain left the van, but prior to the stopping of the van during which the drugs were seized, McClain spoke with Kirk. During the conversation, McClain did not mention to Kirk whether he had seen the paper bag earlier described by the informer. (Whether or not McClain was asked about the bag at that time is not indicated in the record.)

Eventually the van left the service station. As it was being driven in Marion, Mike Wiseman, the director of the Williamson County Detective Unit, sent out a radio call to stop the van. Paul Davis, a uniformed police officer, then stopped the van in an area well lighted by mercury vapor lights. Davis asked the driver of the van and defendant for identification. As Davis stood on the passenger side of the van, defendant got out of the van. At that point, Davis saw a paper bag on the floor of the van in the area which "would have been in the proximity of between his [defendant's] legs as he was sitting." Davis could see that the bag was ripped and contained vials of pills. He reached into the van, removed the bag, and informed defendant and the driver that they were under arrest.

At the conclusion of all the evidence presented at the hearing on the motion to suppress the court ruled that the warrantless seizure of the drugs had been based upon probable cause. The court denied the motion to suppress.

Defendant's first contention on this appeal is based primarily upon the law enunciated in *Aguilar v. Texas*, 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, and *Spinelli v. United States*, 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584. No question is raised about the lack of a warrant for the arrest or seizure.

In *Aguilar* the United States Supreme Court held the whenever a

warrant is sought based upon information supplied by an anonymous informant, the warrant should not be issued unless the application sets forth: (1) the underlying circumstances necessary to allow a judge independently to determine the validity of the informant's conclusion; and (2) the underlying reasons for the applicant's belief that the informant is credible and his information is reliable. In *Spinelli* the court held that if the informant's tip alone is inadequate to establish probable cause under this two-pronged *Aguilar* test, then other information corroborative of the tip but obtained independently of the tip, should be considered in determining whether there is probable cause for issuing a warrant.

The instant case, in contrast to *Aguilar* and *Spinelli,* involved a warrantless seizure. Nevertheless, the *Aguilar-Spinelli* standards still apply; for the standards applicable to a policeman's on-the-scene assessment of probable cause are at least as stringent as the standards applied when a judge is asked to issue a warrant. (*Whiteley v. Warden,* 401 U.S. 560, 28 L. Ed. 2d 306, 91 S. Ct. 1031; *People v. Saiken,* 49 Ill. 2d 504, 275 N.E.2d 381, *cert. denied,* 405 U.S. 1066; see *Aguilar v. Texas; People v. King,* 12 Ill. App. 3d 355, 298 N.E.2d 715.) Were this not so, any resort to the procedure for obtaining a warrant would, in effect, be discouraged. *Aguilar v. Texas; Whiteley v. Warden.*

■■  In our opinion, the informant's tip in the instant case was sufficient to establish probable cause under the two-pronged *Aguilar* test, and independent corroboration was unnecessary. First of all, it is apparent that the information contained in the tip had been based on the personal observation of the informant. As Kirk explained, the information had been obtained "between the informant and Chriest," and the informant had "seen and observed the drugs" in the van in which defendant was a passenger. Secondly, the informant had proven to be credible and his information reliable in the past. Kirk had known the informant for three or four months, and the informant had supplied information and helped in controlled drug purchases on eight to 15 occasions. The drugs obtained in these prior purchases had been analyzed and proven to be controlled substances.

It is true that no arrests or convictions or formal court action of any type had resulted, as of the date of the suppression hearing, from the information previously supplied by this informant. But that fact alone is not determinative of the issue of the informant's credibility or the reliability of his information. In a case such as the instant case, the informant's credibility is determined at the point when the substances confiscated as a result of the information previously supplied by him are analyzed. If analysis has proven those substances to be illicit drugs, as the informer has claimed them to be, then the information supplied by the informer is shown to be accurate and his credibility is established. On the

other hand, if the confiscated substances are analyzed and shown not to be illicit drugs or if, in fact, no substances are found in the place the informer has claimed them to be, then the informer's credibility is subject to serious doubt.

Of course, arrests, indictments, and convictions are likely to follow when the informant's information has proven accurate; but that does not mean that, because an arrest, indictment or conviction has not followed, the informant is not credible. There are many reasons why the police or prosecutors might choose not to arrest or take formal court action against an individual or choose to postpone an arrest or formal court action. This is especially true in many cases involving drug rings, where to arrest one individual in advance of others might result in the others fleeing the jurisdiction or ridding themselves of incriminating evidence. Oftentimes, as in the instant case, the police will elect to use information supplied by an informer merely as an "investigative tool." Such an election by the police does not detract from the credibility of the informer.

As the court pointed out in *People v. Lawrence,* 133 Ill. App. 2d 542, 544, 273 N.E.2d 637, 639:

> "Convictions, while corroborative of an informer's reliability, are not essential in establishing his reliability. Arrests, standing alone, do not establish his reliability, but information that has been proved accurate does. Arrestees may not be prosecuted; if prosecuted they may not be indicted; if indicted they may not be tried; if tried they may not be convicted. If a case is tried, the informer may never testify; his credibility may never be passed upon in court. The true test of his reliability is the accuracy of his information."

Also see *People v. Thomas,* 24 Ill. App. 3d 932, 321 N.E.2d 696, *aff'd,* 62 Ill. 2d 375, 342 N.E.2d 383.

Although not cited by either side in the instant case, we have examined the opinions of the Illinois Supreme Court in *People v. Thomas,* 62 Ill. 2d 375, 342 N.E.2d 383, and *People v. Parker,* 42 Ill. 2d 42, 245 N.E.2d 487. We do not feel, however, that either of those cases requires that we reach a different result on this issue in the instant case.

Defendant next contends that the trial court erred in denying defendant's motion for mistrial. The motion was based on the admission at trial of testimony relating to the prospective sale by defendant to undercover agent McClain of some of the drugs taken during the burglary of the Karr Drug Company.

■■ Although, as a general rule, evidence of other offenses is ordinarily inadmissable, a recognized exception to the rule exists where the evidence tends to aid in the identification of the accused as the person who committed the particular crime charged. (*People v. Lewis,* 30 Ill. 2d

617, 198 N.E.2d 812.) In a burglary prosecution, evidence of the defendant's attempt or agreement after the burglary to sell the fruits of the crime is relevant to identify the defendant and indicate his intent in connection with the burglary. (*People v. Delgado*, 30 Ill. App. 3d 890, 333 N.E.2d 633; *People v. Shockey*, 66 Ill. App. 2d 245, 213 N.E.2d 107, *cert. denied*, 385 U.S. 887; see also *People v. King*, 4 Ill. App. 3d 942, 282 N.E.2d 252.) Any evidence of a prospective sale by defendant to Agent McClain of the drugs stolen in the drug store burglary was squarely within this exception to the general rule, and, therefore, properly admitted.

Defendant's final contention is that the evidence was insufficient to prove his guilt beyond a reasonable doubt. Defendant concedes that his argument is premised upon this court's finding in favor of defendant on the issue just discussed above. Defendant asserts that if the testimony of the prospective sale of the stolen goods to Agent McClain was excluded, then only the circumstantial evidence that the drugs were found in the van in which defendant was a passenger would tend to implicate him in the burglary.

We have already determined that the evidence of the prospective sale of the drugs by defendant was properly admitted. Therefore, we need not determine whether the proof would have been sufficient without that evidence. In light of that evidence we cannot say that defendant's guilt was not proved beyond a reasonable doubt.

The judgment of the trial court is affirmed.

Affirmed.

KARNS, P. J., concurs.

Mr. JUSTICE EBERSPACHER, dissenting:

I do not consider that the informant's tip in the instant case was sufficient to establish probable cause under the two-pronged *Aguilar* test. Nor do I agree with the discussion of the majority regarding an informant's credibility none of which is supported by the citation of cases and which in my opinion is not consistent with either *People v. Parker* nor *People v. Thomas*. While the lack of prosecution in one or two cases on the basis of information furnished by an informer may not detract from an informer's credibility, I consider that failure to prosecute in each of the 8 or 15 cases an informer has allegedly reliably informed in reflects adversely on his credibility, and I find no authorities to the contrary.

There is no presumption that one who is consistently engaged in gaining the confidence of persons and then breaking that confidence for his own gain is credible or reliable; in fact the practice offends the

American sense of justice and fair play. To say that such practice is justified because such deceit and breach of confidence is engaged in by an informer only regarding those whom *the informer knows* to be violators of the law, but who have not been convicted for the alleged criminal activity, is not justification.

Here, I particularly note the bizarre factual situation. The alleged informer allegedly informed that the van containing the evidence and defendant would be at one of two named taverns in Herrin. The van was never at either tavern and when the van was discovered parked elsewhere, instead of being stopped and entered or searched was followed some eight miles, to the Dairy Queen in Marion, where drug enforcement officer McClain went to the van and spoke to both the driver and the defendant. We have no explanation as to why he did not see fit to look into the van and yet he as a member of the surveillance team would have known that the drugs were in the van in the torn shopping bag. Nor do we have any explanation of why McClain then followed the van to a nearby filling station, entered the van, spoke with the driver and defendant, but had been creditably informed that the drugs were in the van in the torn shopping bag, and failed to either see them or ask permission to search for them. I can only consider that law enforcement officer McClain did not consider the information furnished by the informer credible until after his second visit to the van and his actual entry into the van. Obviously, the informant's information was not credible until after agent McClain had been in the van on his second visit, and then only when a traffic officer was directed by his superior to stop the van although no traffic offense was committed.

With surveillance teams in several cars there was little danger of disposition of whatever evidence may have been in the van, or the defendant and van escaping, yet the numerous officers did not see fit to even file for a search warrant on the basis of information furnished by the allegedly credible informer although they had hours in which to do so.

I agree as the court said in *People v. Lawrence,* speaking of the reliability of an informer; "The true test of his reliability is the accuracy of his information" but the accuracy of the information should be tested at the time he gives it and not after his accomplices refuse to make the warrantless seizure based on the information on numerous opportunities and then only cause it to be made by another after they have had the opportunity to make the informant credible; particularly when the information furnished was not true as to the place (one of two taverns in Herrin) nor as to the city (Herrin).

Under the circumstances presented in this case, the trial court, in my opinion, erred in failing to suppress the evidence seized without a warrant, it erred in not excluding the evidence. Furthermore, the court

erred in allowing testimony over objections that the surveillance team met to attempt to purchase drugs from defendant. The credible informer had not informed any one that defendant was engaged in the sale of drugs or was going to engage in such sale; there was no credible information that defendant was in possession of drugs taken in the drug store burglary until defendant had failed to sell any drugs to agent McClain. I would reverse the conviction.