THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* FREDERICK J. SWIFT *et al.*, Defendants-Appellees.

Fifth District   No. 77-386

Opinion filed May 23, 1978.

Robert H. Howerton, State's Attorney, of Marion (Bruce D. Irish and John A. Clark, both of Illinois State's Attorneys Association, of counsel), for the People.

Brocton Lockwood and W. Charles Grace, both of Lockwood and Grace, of Carbondale, for appellees.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

This is an appeal by the State, pursuant to Supreme Court Rule 604 (Ill. Rev. Stat. 1977, ch. 110A, par. 604), from an order of the circuit court of Williamson County suppressing certain evidence seized incident to the defendant's arrest without a warrant.

Defendant-appellee, Frederick J. Swift, was arrested at approximately 11:30 p.m. on November 14, 1976, while en route from Williamson County to his home in Washington Park, Illinois. At the time defendant's automobile was stopped, defendant's brother, co-defendant Darrell Lee Swift, was driving and defendant was "passed out" in the back seat of the

car. There were three other occupants of the car who were all juveniles and who were subsequently transported to the St. Clair County Juvenile Detention Center. After removing the suspects from the car, the arresting officers conducted a search for weapons but uncovered only a plastic container of coins and a gold ring situated on the floorboard of the automobile. The suspects were taken to the Washington County jail in Nashville, Illinois, approximately 20 miles from the scene of the arrest, and with defendant's permission, the automobile was driven to Nashville by police officers. While in custody at the county jail, defendant signed a consent form authorizing the officers to search the locked trunk of the car. This second search produced two items, a nine-inch Sears black-and-white television and a .22-caliber revolver identified as objects taken from the Laurel Johns' home in Creal Springs burglarized that same evening. It was later discovered that the coins and ring had also been taken in the same burglary.

After an evidentiary hearing the court suppressed the items from the trunk of the car on the basis that no probable cause existed for the arrest and ensuing search and seizure. The court made the following findings:

"I don't believe that the informant in this case meets any of the standards of a reliable informant. I am aware that just because there has not been any arrest or convictions made as a result of the informants information, that that does not by itself mean that he is unreliable, however, the only indication in the record that I have of reliability is the statement by the detective that he was unreliable. He cannot remember any of the details of any of the reliable information that he received from the informant. Therefore, if there is probable cause for making the search and the arrest it would have to be based upon corroboration of what the informer told the detective. As I recall the detective's testimony was that the informer told them that the Swifts were in town and they had asked him if they would go out and commit burglaries with him and this was about five-thirty, and then at ten-thirty the detectives got calls that there were burglaries committed. He called up the informant and the informer said, well, I just saw the Swifts leaving town and they are going down 57 and will go down route 64. Then when the State Trooper got the call there was this car coming down route 64. He stopped them and made the arrest along with Trooper Parker. The issue is whether that is enough corroboration * * * Well, in the first place, the informer never did say that the Swifts did, in fact, commit any of those burglaries with any * * * according to the detective. The detective never made that statement that the informer either saw the Swifts commit the burglaries or saw any of the property in their possession but just

that they left town at a certain time and a certain route. I don't believe that is sufficient corroboration to support a probable cause search or arrest of the Swifts. The next issue is whether the consent signed by Frederick James Swift made the search of the Swifts vehicle reasonable under the circumstances. I don't think it did. The reason being that there was no probable cause to make the arrest in the first place and Mr. Swift would never have been in the position of being in jail or the county sheriff's office in Washington County under arrest if it had not been for the illegal arrest. Furthermore, under the circumstances there was no intervening time span that would allow him to collect himself and give a valid consent. He was, according to the officers' testimony, he was out cold when they picked him up. They had to shake, according to one officer, and slap according to another officer, in order to try to arouse him and that didn't work and they had to drag him out of the car, according to one officer, by his hair and his arms, and according to the other by his body. According to the witness Lawson the man was drunk when he came to his house between six-thirty and seven-thirty and while he was there he had at least two, six-packs of beer. So, I think under the circumstances of the illegal arrest and the short time span after the arrest and the fact that the man had consumed a large quantity of liquor that the consent that he did sign was not voluntary."

We agree with the trial court's incisive analysis and accordingly affirm the suppression of the evidence.

A brief recitation of the evidence adduced at the suppression hearing exposes the infirmity of the procedures employed in this case. Officer Mell Williams of the Williamson County Detective Unit testified that as a result of his investigation of several unsolved burglaries in Williamson County he had included the defendant and his family as possible suspects. Without giving any details, Williams also stated that a method of operation similar to the one used in the Laurel Johns burglary had emerged in several other Williamson County burglary cases. At approximately 5 p.m. on November 14, 1976, Detective Williams received a phone call from a confidential informant who advised that the defendants were in Williamson County and had requested him to assist them in committing some burglaries that evening in Creal Springs. The informant described the defendant's automobile as a 1974 or 1975 Blue Dodge with Illinois license plate No. 104390. He further notified Williams that the defendants were proceeding to the Lawson residence in Rural Route, Creal Springs. Williams drove to the Lawson residence but, unable to find the car, returned to the station. At 9:30 p.m. Williams received a call from the Williamson County Sheriff's office that three homes in Rural

Route, Creal Springs had been burglarized that evening. The witness then contacted the informant who stated that he had seen the defendant's car turn at Johnston City onto Route 57, headed for East St. Louis. On the basis of this information Detective Williams issued a dispatch to all police cars in the area describing the defendant's automobile as a black over blue 1967 or 1968 Dodge Dart with Illinois license No. 104390 and instructing them to detain the occupants on charges of burglary. The bulletin informed the highway patrol that the suspects might possess weapons and that it was believed the car contained items stolen from a residence in Williamson County.

Shortly after 11 p.m. Illinois State Trooper Claude Flannagan spotted the defendant's automobile traveling on Route 64 in Washington County. Thereafter Trooper Charles Parker joined Flannagan and aided in apprehending the defendants. Flannagan acknowledged that defendants were apparently not violating any laws at the time of the arrest. The arresting officers each testified that the defendant was "passed out" in the back seat of the automobile and did not revive when they first slapped him. After dragging the defendant from the car the officers read the *Miranda* warning to all of the occupants and conducted a cursory search of the automobile for weapons. During this search Officers Flannagan and Parker found the plastic container of coins and the gold ring on the floor board of the front seat. The suspects were then transported 20 miles to the county jail in Nashville, Illinois where defendant signed a form authorizing a search of the automobile trunk. The officers testified that after arriving at the jail the defendant appeared alert and coherent.

On cross-examination defense counsel inquired as to information previously supplied to the police by this particular informant. Detective Williams admitted that none of the previous information had resulted in either convictions or arrests. The witness remained firm in his belief that the informant was a reliable source; however, when questioned further he was unable to recall even the nature of the information which had been previously related by this informant. Williams also testified that three burglaries had been committed in Creal Springs on the evening of November 14, 1976, but that to his knowledge the other two burglaries were not related to the Laurell Johns burglary at issue here.

Kenneth Lawson, defendants' brother-in-law, testified that the defendants had arrived at his home in Rural Route Creal Springs at approximately 6:30 or 7 p.m. on November 14, 1976. Lawson stated that defendant Frederick Swift appeared to be drunk when he arrived and that he drank two six-packs of beer during his visit. Before long defendant passed out and the witness put him to bed. Meanwhile co-defendant Darrell Swift drove to his girlfriend's house and returned late in the evening. Lawson testified that when the defendants left his home at

approximately 9 or 10 p.m. the defendant was so intoxicated that he had to be carried to the car.

Defendant Frederick Swift testified that he started drinking at 10 o'clock that morning. He did not recall signing the consent form. Although he did recognize his signature, he commented that because it was so scribbled, he must have been very intoxicated when signing the form.

Based on the foregoing information the trial court made the specific findings enumerated above and suppressed the evidence recovered from the trunk of the automobile. It did not, however, suppress the plastic container of coins and the gold ring found on the front floorboard of the defendant's car.

The State propounds two theories to uphold the search in this case. First, it asserts that the tip was independently corroborated; therefore, the officers had probable cause to arrest the defendants and the subsequent search was merely incidental to that arrest. The State argues that in any case there was probable cause to believe that the automobile contained contraband so that a search of its contents apart from a corresponding arrest of the occupants was reasonable. We shall address each of these theories in turn.

■■ ■ Initially, we note that the standard employed in testing the validity of warrantless arrests and searches must be at least as strict as the standards applied when a magistrate is requested to issue a warrant. (*Whitely v. Warden,* 401 U.S. 560, 28 L. Ed. 2d 306, 91 S. Ct. 1031; *United States v. Ventresca,* 380 U.S. 102, 13 L. Ed. 2d 684, 85 S. Ct. 741; *People v. Chriest,* 42 Ill. App. 3d 656, 356 N.E.2d 587.) In fact, Illinois courts have held that a higher standard is required of police officers acting without a warrant than of magistrates issuing warrants. (*People v. Saiken,* 49 Ill. 2d 504, 275 N.E.2d 381, *cert. denied* (1972), 405 U.S. 1066, 31 L. Ed. 2d 796, 92 S. Ct. 1499; *People v. King,* 12 Ill. App. 3d 355, 298 N.E.2d 715.) The obvious rationale for this proposition is that less stringent standards for reviewing a warrantless arrest and search would discourage resort to the preferred procedure of obtaining a warrant. In *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, the United States Supreme Court enunciated a two-pronged test of the sufficiency of an affidavit to obtain a search warrant. Not only must the magistrate be informed of the underlying circumstances from which the informant concluded that a crime was to be committed, but the magistrate must also be informed of some of the underlying circumstances from which the officer concluded that the informant had given reliable information. In this case, the fact that the informant received a phone call from the defendant requesting his participation in a burglary supplied sufficient information to satisfy the first inquiry. However, Detective Williams's testimony adduced at the

suppression hearing wholly failed to meet the requirement of the second prong of the *Aguilar* test. At the hearing Williams admitted that none of the information previously supplied by the informant had ever resulted in arrests or convictions. Moreover, Williams was unable to recall any of the circumstances surrounding the previous tip. Finally, Williams disclosed that since his involvement in this case the informant himself had been arrested. Based on this testimony the trial court correctly held the informant to be unreliable. Such a holding is not, however, fatal to an ultimate finding of probable cause for corroboration by independent sources may compensate for the inadequacy of the tip. The Supreme Court in *Spinelli v. United States*, 393 U.S. 410, 415, 21 L. Ed. 2d 637, 643, 89 S. Ct. 584, articulated the formula as follows: "Can it fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass *Aguilar's* tests without independent corroboration?"

Applying this test to the instant case, the information possessed by the police at the time of the arrest consisted of: (1) an unreliable tip that the defendants intended to commit some burglaries in Creal Springs that evening; (2) a report that three burglaries had in fact been committed in Creal Springs; (3) a second tip from the same unreliable informant that he had seen the defendant's automobile traveling in the general direction of East St. Louis; (4) identification of the defendant in an automobile essentially matching the informant's description traveling in the general direction of East St. Louis. Detective Williams also stated that prior to November 14, 1976, he had suspected defendants of complicity in other Williamson County burglaries and that the method of operation used in those burglaries were similar to that used on November 14, 1976; however, these bare assertions without further explication may not properly be used to bolster otherwise inadequate corroboration. As the Supreme Court announced in *Spinelli v. United States*, 393 U.S. 410, 418-19, 21 L. Ed. 2d 637, 645, 89 S. Ct. 584:

> "But just as a simple assertion of police suspicion is not itself a sufficient basis for a magistrate's finding of probable cause, we do not believe it may be used to give additional weight to allegations that would otherwise be insufficient."

Thus, the only independent corroboration remaining is the fact of the burglaries themselves and the presence of the defendant's car headed in the same direction predicted by the informant. In considering the former, we feel it is significant that two of the burglaries were committed in the small town of Creal Springs that same evening, yet so far as Williams knew, defendants were not involved in those burglaries. In addition, defendants were not the only persons under suspicion for unsolved Williamson County burglaries. Finally as defendants had relatives

residing in Creal Springs whom they did in fact visit on November 14, 1976, their presence in the vicinity was innocent enough. The State also seeks to corroborate the tip on the ground that the informant's communication concerning the location of the automobile was accurate. While this may be true, we must recognize that the corroboration involved is of a collateral fact only; that is, there is nothing suspicious about driving on a highway two hours after and three counties away from the scene of a robbery. As explained in *Whitely v. Warden*, 401 U.S. 560, 567, 28 L. Ed. 2d 306, 312-13, 91 S. Ct. 1031:

> "This Court has held that where the initial impetus for an arrest is an informer's tip, information gathered by the arresting officers can be used to sustain a finding of probable cause for an arrest that could not adequately be supported by a tip alone. [Citation.] But the additional information acquired by the arresting officers must in some sense be corroborative of the informer's tip that the arrestees committed the felony or, as in Draper itself, were in the process of committing the felony."

The *additional* information in this case, *i.e.*, that burglaries had in fact been committed and that the defendants were ultimately arrested two hours later and three counties away, do not serve to corroborate the belief that it was the defendants who committed one of the burglaries. Similarly, it has been said that "[i]n order to make a warrantless arrest, an officer must have probable cause to believe that a criminal offense has been committed *and that the person to be arrested has committed it.*" (Emphasis added.) (*People v. Spriggs*, 38 Ill. App. 3d 737, 738, 348 N.E.2d 468.) It is this latter element which the trial court evidently found lacking in this case.

We have carefully examined those cases cited by the State and find them factually distinguishable. For example, in *People v. Clay*, 55 Ill. 2d 501, 304 N.E.2d 280, several witnesses had given the arresting officers descriptions of defendant which corroborated that of an unreliable informant. The State cites *People v. Jackson*, 21 Ill. App. 3d 326, 315 N.E.2d 204, for the proposition that probable cause may be based upon conclusions of an informant whose information was gathered from statements of the defendant himself. We do not dispute this; however, in *Jackson* the informant, who had personally observed the contraband in defendant's home, was shown to be reliable. In this case, the unreliable informant had no personal knowledge that the defendants actually committed the Creal Springs burglary but merely that earlier in the evening they had expressed an intent to do so. Finally, in *People v. Blitz*, 68 Ill. 2d 287, 369 N.E.2d 1238, the officers, already possessed with reliable information concerning drug traffic at a certain residence, personally observed the defendant's suspicious activity giving rise to

probable cause for his arrest. No such observation exists in our case.

■■ A trial court's finding as to probable cause will not be overturned by a reviewing court unless manifestly erroneous. (*People v. Clay*, 55 Ill. 2d 501, 304 N.E.2d 280; *People v. Brooks*, 51 Ill. 2d 156, 281 N.E.2d 326; *People v. Dailey*, 51 Ill. 2d 239, 282 N.E.2d 129.) We find no manifest error in the trial court's determination that no probable cause to arrest existed in this case. Absent probable cause the arrest was illegal, hence the product of any search incident to that arrest must be suppressed.

The State seeks to validate the search on the ground that in any case the arresting officers had probable cause to believe the automobile contained items stolen from the homes in Creal Springs. This is an entirely independent theory as recognized in *People v. Erickson*, 31 Ill. 2d 230, 201 N.E.2d 422, and in *Chambers v. Maroney*, 399 U.S. 42, 48-49, 26 L. Ed. 2d 419, 425, 90 S. Ct. 1975, where the court quoted from its decision in *Carrol v. United States*, 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280:

> " '. . . [T]hose lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a competent official authorized to search, probable cause for believing that there vehicles are carrying contraband or illegal merchandise. . . .'
>
> &ast; &ast; &ast;
>
> The Court also noted that the search of an auto on probable cause proceeds on a theory wholly different from that justifying the search incident to arrest:
>
> 'The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law.' "

■■ To a large extent our rationale with regard to the officer's probable cause to arrest applies to this theory as well. Indeed, the officers had even less reason to suspect the car contained contraband than that defendants were involved in a burglary for many burglars dispose of their spoils immediately after the crime. No one purported to have witnessed the robbery or to have spotted the stolen items in the defendant's car. Under these circumstances, the State has failed to show why the officers would have reasonably expected to find contraband in this particular automobile.

■■ Finally, the State argues that defendant waived any challenge to the search in this case when he signed a consent form at the police station following his arrest. We note that there was abundant evidence that defendant was in a state of extreme intoxication at the time of the arrest. Although he did not sign a consent form until approximately one hour later, the trial court specifically found that because of his intoxicated

condition, he was unable to effect a knowing and voluntary consent to search. Whether a consent to search has been voluntarily given is a factual determination for the trial court in the first instance and will not be disturbed on appeal unless clearly unreasonable. (*People v. Zimmerman*, 44 Ill. App. 3d 601, 358 N.E.2d 715; *People v. Grasty*, 30 Ill. App. 3d 811, 333 N.E.2d 493.) We feel there was sufficient evidence to justify the trial court's finding.

While police officers should not be held to rigorous technicalities in performing their duties, in our opinion the totality of facts known to Officers Flannagan and Parker at the time did not give them sufficient probable cause to arrest. We cannot sustain this arrest and subsequent search incident without diluting important safeguards afforded defendants by our constitution. Accordingly, we affirm the trial court's suppression of the evidence.

Affirmed.

JONES and WINELAND, JJ., concur.