THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.* STANLEY M. SOKOLOW *et al.*, Defendants-Appellees.

First District (5th Division)    No. 80-491

Opinion filed June 30, 1981.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Iris E. Sholder, and Christine A. Campbell, Assistant State's Attorneys, of counsel), for the People.

Stroup, Goldstein, Jenkins & Pritzker, of Chicago (Michael L. Pritzker, R. Brent Daniel, and Mark F. Sullivan, of counsel), for appellees.

Mr. JUSTICE LORENZ delivered the opinion of the court:

The defendants, Stanley Sokolow and William Lordan, were accused of violating the Illinois Cannabis Control Act (Ill. Rev. Stat. 1977, ch. 56½, pars. 704(e) and 705(e)) after Federal agents stopped their car and recovered cannabis. The trial court granted a motion to suppress this evidence after finding that (1) the evidence was seized as the result of an arrest which was made without probable cause and (2) the agents did not have sufficient justification for an investigatory stop. The State appeals (Ill. Rev. Stat. 1979, ch. 110A, par. 604(a)), contending that the trial court's findings are manifestly erroneous.

We affirm because (a) we cannot conclude that it was manifestly erroneous for the trial court to find that the evidence was recovered as the result of an arrest, and (b) we agree that there was no probable cause for this arrest. The material facts follow.

An unidentified informer who had, in the past, been paid for providing information, told Norbert Kuksta, an agent of the Federal Drug Enforcement Administration (D.E.A.), that Sjon Brouwer was selling drugs from his house in Bridgeview, Illinois, and that Brouwer had a Colorado source of supply. A computer check showed that Brouwer had been the target of an investigation a few years earlier, although he had not been arrested.

Kuksta and another D.E.A. agent, Francis Tucci, watched Brouwer's home for several weeks. Over this period, a number of people drove up to visit Brouwer. The agents determined who was registered as owning each of these vehicles, and the informant told the agents that he could identify some of these people as being involved with drugs. There is no indication of how many people visited Brouwer, or how long they stayed, or whether they carried any packages when they left.

When the agents arrived to set up surveillance on December 19, 1978, a Subaru with Colorado license plates was already parked in Brouwer's driveway. The defendants carried two suitcases and a duffel bag out of the house and put this luggage in the Subaru. Then they removed a luggage carrier from the top of the Subaru and carried it into the house. Brouwer was present, and, according to the agents, the defendants appeared to be looking around while they loaded the car.

When the defendants drove away, the agents followed in separate vehicles, periodically switching places to keep from being detected. The Subaru was proceeding down an interstate highway when Tucci radioed Kuksta to report that the defendants apparently noticed the surveillance, and that the passenger, Lordan, seemed to put something on the floor of the car. According to Kuksta's sworn testimony, "We decided to place them under arrest at that time." So, the agents activated flashing lights to signal Sokolow to pull over to the side of the highway.

Both defendants got out of the Subaru. The agents identified themselves, requested that the defendants identify themselves, and asked them to get into the back seat of one of the two-door cars used by the agents. The agents did not unholster their guns, and the defendants were not handcuffed at this time. Tucci sat in the front seat of the car while Kuksta went to the Subaru.

According to Kuksta, he smelled marijuana in the car, and saw a hand-rolled cigarette on the floor along with a metal can that was filled with marijuana. On the back seat was a small cloth bag that contained hashish. Several more of these small sacks were in the duffle bag. Kuksta testified the defendants were then advised of their rights and "formally" placed under arrest.

OPINION

The findings of fact reached by a trial court at a hearing on a motion to suppress evidence will not be reversed unless they are manifestly erroneous. (*People v. Clay* (1973), 55 Ill. 2d 501, 304 N.E.2d 280.) Therefore, we must determine whether it was manifestly erroneous for the trial court to believe Agent Kuksta's testimony that he and Agent Tucci stopped the Subaru to arrest the defendants, and whether it was manifestly erroneous to conclude that this constituted an arrest.

It is clear that the agents suspected that the defendants had just delivered a shipment of drugs to Brouwer. And it is highly relevant that Kuksta testified that he and Tucci decided to arrest the defendants immediately after the surveillance was discovered. The trial court, therefore, could have concluded that the agents believed (1) the defendants had delivered drugs to Brouwer; and (2) if the agents let them drive away after the surveillance was discovered, then the defendants would be free to alert Brouwer to immediately dispose of the hypothetical shipment.

The record shows that there was a companion case involving Brouwer, and it is reasonable to conclude that the agents felt they had to arrest the defendants to keep them from alerting Brouwer while the agents sought a search warrant for Brouwer's house.

■■ We conclude that it was not manifestly erroneous for the trial court to

both believe Agent Kuksta's testimony and to find that the agents arrested the defendants when they restrained the defendants by stopping the Subaru.

The next step in our analysis is to determine whether the agents had probable cause to believe that, when the warrantless arrests were made, the defendants had committed or were committing an offense. We recognize that probable cause for an arrest is based on common sense probabilities. (*People v. Creach* (1980), 79 Ill. 2d 96, 402 N.E.2d 228.) Examining all the facts and circumstances known by the agents, we must decide whether a person of reasonable caution would have been justified in believing that an offense had been committed and that the offense had been committed by the defendants. *Creach.*

The defendants argue that, despite the "corroborating circumstances" upon which the State relies, there was no probable cause for their arrests because (1) there was no showing of a factual basis for the informant's conclusions, and (2) the informant's tip about a Colorado source of supply is so general and vague that—even as arguably corroborated—it is not sufficient to establish probable cause. *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509; *People v. Gates* (1980), 82 Ill. App. 3d 749, 403 N.E.2d 77.

■■ The State replies that there was sufficient independent corroboration of the informant's information for the totality of the circumstances to establish probable cause. (*People v. Blitz* (1977), 68 Ill. 2d 287, 369 N.E.2d 1238, *cert. denied* (1978), 435 U.S. 974, 56 L. Ed. 2d 68, 98 S. Ct. 1622.) We find that, even though *Blitz* may reach the limit on how far the term "probable cause" can constitutionally be stretched (see dissenting opinions), the facts in the present case fall short of the showing that was sufficient to establish probable cause in that case. We agree with the defense arguments and we conclude that, based on the information made available to the agents in this case, a person of reasonable caution would not have been justified in believing that an offense had been committed or that the offense had been committed by the defendants.

For the preceding reasons we affirm the order of the circuit court suppressing the evidence in this case as the tainted fruit of an unlawful arrest.

Affirmed.

SULLIVAN, P. J., and MEJDA, J., concur.