THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KELWIN GAILES, Defendant-Appellant.

Fifth District   No. 5—83—0455

Opinion filed October 26, 1984.

Randy E. Blue and John R. Abell, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

John Baricevic, State's Attorney, of Belleville (John X. Breslin and Vicki R. Wright, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE KARNS delivered the opinion of the court:

Defendant appeals from his conviction, after trial by jury in the circuit court of St. Clair County, of possession of more than 500 grams of a substance containing cannabis. Two issues are presented for our review: whether the cannabis found in the defendant's automobile should have been suppressed because his warrantless arrest was based upon information supplied by an unidentified informant insufficient to establish probable cause, and whether the defendant's consent to a search of his car was rendered void by the illegality of the arrest.

On February 23, 1983, at approximately 8:30 p.m., an unidentified person telephoned the Fairview Heights police department and informed them that three or four black males had left East St. Louis that afternoon at 2 or 3 p.m., en route to Terre Haute, Indiana, for the purpose of obtaining 20-25 pounds of marijuana. He identified the men as James Wilkerson, Calvin, and "Buggy." The informant stated that the men would return to East St. Louis between 11 p.m. and midnight, and would arrive at the 2100 block of Kansas Street. The car they were driving was described as a very clean black-over-blue 1976 Chevrolet Monte Carlo, with two-inch whitewall tires and a CB whip antenna, belonging to James Wilkerson. This information was relayed to the East St. Louis police department. At approximately 11 p.m., the East St. Louis police conducted surveillance in the 2100 block of Kansas Street, and saw a parked Monte Carlo fitting the description supplied by the informant. The police maintained their watch of the area.

At approximately 12:45 a.m., the informant called the police a sec-

ond time, stating that the travelers had switched cars and were now riding in a brown 1972 Pontiac Catalina. This information was provided to the surveillance unit and at 1:25 a.m., they spotted a car matching the second description rolling to a stop in front of 2136 Kansas Street. The police ordered the occupants out of the car with their hands in the air. The purse of the female passenger was searched without her consent, and a small quantity of cannabis was discovered.

At the suppression hearing, Officer Marion of the East St. Louis police department testified that the defendant, Kelwin Gailes, was driving the car, and that the occupants were Anthony "Boggie" Nicholson, James Wilkerson, and a young black woman. Officer Marion was acquainted with Wilkerson and knew him to be a marijuana dealer in the past. Officer Marion told the defendant why his car was stopped by the police and asked for permission to search the trunk. Gailes responded by saying, "I don't mind; I have nothing to hide." When the defendant opened the trunk, Officer Marion smelled the aroma of cannabis, and upon closer inspection he discovered two brown paper bags containing six large plastic bags of marijuana weighing 5½ pounds. The car's occupants were then taken into custody.

The legality of the arrest depends upon whether there was probable cause to stop and search the automobile in question and subsequently arrest the defendant, considering the totality of the facts and circumstances known to the East St. Louis police at the time. (*Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317.) The recent *Gates* decision, which explained or supplanted the more rigid *Aguilar-Spinelli* test (*Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509; *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584) in determinations of probable cause, relies on a common-sense approach in balancing the reliability and unreliability of all the details known to the arresting officer prior to the stop. Though forbidden to conduct a *de novo* review (*Massachusetts v. Upton* (1984), 466 U.S. 727, 80 L. Ed. 2d 721, 104 S. Ct. 2085), we must scrutinize the record facts under a *Gates* analysis in order to ascertain whether the trial judge committed manifest error in refusing to suppress the objectionable evidence, warranting a reversal (*People v. Reynolds* (1983), 94 Ill. 2d 160, 165, 445 N.E.2d 766, 769).

Details provided to the East St. Louis police consisted of a description of two cars, the first of which was quite detailed, and the partial identification of three black males who were purportedly making a drug run which would terminate at the Kansas Street location. Verification of the facts offered by the informant included the discovery of the parked Monte Carlo precisely matching the description supplied in

the tip, and later observation of the brown Pontiac occupied by four black persons, one of whom was well known to the police as a drug dealer. The time frame predicted by the informant proved to be inaccurate, but the discrepancy was not so wide as to discount the information. These corroborating facts, independently ascertained, are, in our view, sufficient to establish probable cause under the *Gates* test.

The anonymous letter which precipitated the *Gates* arrest included abundant information, with details that indicated an intimate knowledge of the defendants and their plans. Predictions which were verified by law enforcement personnel included precise identity and address and travel plans to south Florida, with accurate details of time and the methods used in the drug "run." Most tellingly, the information supplied and later corroborated harmonized convincingly to establish the reliability of the information and the likelihood of criminal conduct. Similarly in the instant case, the totality of those facts known and verified justified a belief in the likelihood of the predicted criminal conduct. Though each detail may be unsuspicious when viewed independently, the cohesive whole supported a finding of probable cause.

The existence of sufficient factual corroboration is not our sole basis for concluding that probable cause was demonstrated in the case at bar. The *Gates* court approved use of the *Aguilar-Spinelli* elements as highly relevant factors in the determination of probable cause. (*Illinois v. Gates* (1983), 462 U.S. 213, 230, 76 L. Ed. 2d 527, 543, 103 S. Ct. 2317, 2327-28.) Viewing this informant's tip by a common sense approach, it can easily be concluded that the informant's knowledge of the evening's events sprung from an intimate familiarity with the plans of the defendants. Additionally, the information's "update" reinforced its authenticity. Therefore, though the informant's identity was never discovered, the reliable nature of his information was established. We conclude, therefore, that the trial court correctly denied defendant's motion to suppress.

Because we have affirmed the lower court's determination of the legality of the arrest, it is unnecessary to address defendant's second point.

For the reasons stated, the conviction is affirmed.

Affirmed.

WELCH, P.J., and HARRISON, J., concur.