THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
MAX R. BECK, Defendant-Appellee.

Fifth District No. 5—86—0356

Opinion filed March 22, 1988.

Don Sheafor, State's Attorney, of Vandalia (Kenneth R. Boyle, Stephen E. Norris, and Gerry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for appellant.

Daniel M. Kirwan and Michelle A. Zalisko, both of State Appellate Defender's Office, of Mt. Vernon, for appellee.

JUSTICE LEWIS delivered the opinion of the court:

Defendant, Max Beck, was charged in Fayette County with unlawful possession of cannabis and unlawful possession of cannabis with intent to deliver under sections 4(e) and 5(e) of the Cannabis Control Act (Ill. Rev. Stat. 1985, ch. 56½, pars. 704(e), 705(e)). Defendant filed a motion to quash his arrest and motions to suppress physical evidence and inculpatory statements. The circuit court granted defendant's motions, finding that (1) prior to defendant's arrest, he was stopped on the pretext of a minor traffic violation; (2) the police, acting upon an informant's tip, took defendant into custody with no independent corroborative investigation; and (3) nothing was presented as to the informant's veracity, reliability, or the basis of his knowledge. The court concluded that the informant's tip was insufficient to establish probable cause to arrest defendant; therefore the evidence seized, and the statements made, after defendant's arrest were tainted and thereby inadmissible. We reverse the order of the circuit court.

A suppression hearing was held on April 4, 1986. The principal witnesses testified as follows.

Carie Henken, a trooper with the Illinois State Police, testified that he was on patrol with Trooper Thomas Brown at approximately 8:15 a.m. on November 18, 1985, when they received a radio message

regarding defendant. Brown called into headquarters and subsequently advised Henken of the contents of his conversation. Brown said he had been notified that a car occupied by defendant, and carrying a large quantity of cannabis, could be coming north from Vandalia, Illinois, on Highway 51. Henken and Brown set up on Highway 51 north of the Vandalia Correctional Center, specifically looking for defendant's vehicle.

Approximately 15 to 20 minutes later defendant's vehicle passed by, headed north. As it passed, Henken noticed something suspended from the vehicle's rear view mirror. He also saw defendant drink from a bottle. The officers pursued defendant in their vehicle and he pulled over approximately one mile down the highway. Because the shoulder was muddy at that location, defendant was instructed to drive to a farm road farther up the highway.

At the point of the second stop, both troopers approached defendant's vehicle. Henken wrote defendant a warning ticket for violating section 12—503(c) of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 12—503(c)) (material obstruction of driver's view). Brown then asked defendant what he had been drinking. Defendant replied that he had been drinking Mountain Dew. Brown asked to see the container and subsequently verified defendant's answer. While standing outside defendant's vehicle, Brown observed something on the floorboard of defendant's car. While Brown was investigating the substance on the floorboard, Henken smelled an odor of "green" cannabis coming from the vehicle.

At about that time, Agent Michael Geurin arrived on the scene. Five to ten minutes had elapsed from the time defendant had been given the warning ticket. Geurin conferred with Henken and Brown, then placed defendant under arrest for possession of cannabis. Geurin asked defendant if they could look through his car. Defendant agreed to the search.

In the course of the search, Geurin found some keys in the passenger compartment of defendant's car. He asked defendant if the keys fit the trunk. Defendant denied that they were the keys to his trunk; nevertheless, Geurin asked defendant to try them. Defendant put a key in the trunk but did not try to turn it. Geurin put his hand on defendant's and turned the key; the trunk popped open. Inside the trunk, the officers observed a large quantity of cannabis in jars and plastic bags.

Trooper Thomas Brown's testimony essentially echoed that of Trooper Henken. In addition, Brown testified that Geurin had told him that the delivery of cannabis was to be made at the rest area be-

tween Vandalia and Ramsey.

Agent Michael Geurin, of the Illinois Division of Criminal Investigation, testified that on November 18, 1985, he was involved in an investigation of defendant. On that day, at approximately 8:15 a.m., he received a call from a confidential informant advising him that defendant had approximately 10 pounds of cannabis in the trunk of his black Mercury Cougar. The informant said that he had seen the cannabis earlier that morning and that defendant was leaving home as he spoke. The informant stated that defendant might be going north on Highway 51. Geurin said the informant had provided information a minimum of four times prior to the information given in this case. The information previously given had led to arrests and/or convictions.

Geurin contacted Trooper Brown, asking him to detain defendant. Geurin provided Brown with a license number and a description of defendant's car. He indicated that defendant might be going north on Highway 51. After he spoke with Brown, Geurin left his office, located south of Effingham, and drove toward Vandalia. While en route, he received a call advising him that defendant had been stopped six miles north of Vandalia.

When Geurin arrived on the scene he spoke to Brown, then informed defendant that they had information that he had a large quantity of cannabis in his trunk. Geurin advised defendant that he was under arrest and that they were going to seize his vehicle. The interior of the vehicle was searched pursuant to defendant's consent. During that search a key was found. Geurin asked defendant to try the key in the trunk despite defendant's assertions that the key did not fit the trunk. Defendant tried the key but claimed it would not turn. To satisfy himself, Geurin put his hand on defendant's and turned the key. The trunk popped open. Geurin observed what he believed was cannabis in the trunk of defendant's car.

Geurin closed the trunk lid. The officers escorted defendant to his home, and then to the county jail. At the jail, Geurin advised defendant of his constitutional rights and defendant signed a form waiving them. Defendant then made inculpatory statements. Afterwards, defendant allowed the officers to search his car and signed a consent form.

Based upon the foregoing testimony the circuit court granted defendant's motion to quash his arrest and his motions to suppress.

■ While a reviewing court should not disturb a trial court's finding on a motion to suppress unless that finding is manifestly erroneous (*People v. Reynolds* (1983), 94 Ill. 2d 160, 445 N.E.2d 766), we be-

lieve that the circuit court's findings were manifestly erroneous given the testimony presented at the suppression hearing.

 The trial court found that the troopers stopped defendant's vehicle on the pretext of a minor traffic violation. The court apparently used this finding as part of its justification for granting defendant's motions to quash arrest and suppress evidence. We believe the court's finding of a pretextual stop in this case is erroneous or, barring that, irrelevant. As will appear hereafter, we find that the troopers had probable cause to believe defendant was transporting a large quantity of cannabis, based upon information provided by the confidential informant. The troopers therefore had grounds to stop defendant, arrest him, and search his vehicle for contraband. They did not need a pretext to stop defendant. The Code of Criminal Procedure of 1963 allows a warrantless arrest when a peace officer "has reasonable grounds to believe that the person is committing or has committed an offense." (Ill. Rev. Stat. 1985, ch. 38, par. 107—2(1)(c).) That the troopers seized upon a convenient traffic violation to effectuate the initial stop, and did not immediately place defendant under arrest for possession of cannabis, is of little import. See *People v. Blitz* (1977), 68 Ill. 2d 287, 369 N.E.2d 1238.

 The circuit court also found that the police, acting upon an informant's tip, had taken defendant into custody with no independent corroborative investigation. The record contradicts this finding. Henken and Brown were able to corroborate the license number given by the informant, the make and color of the car, and the anticipated direction of travel. In addition, defendant passed the troopers' location within a time frame consistent with his having left his residence at the time described by the informant. Although the corroborative facts available were few and pertained to innocent activities, as observed in *People v. Tisler* (1984), 103 Ill. 2d 226, 251, 469 N.E.2d 147, 160, the question is not whether the actions of the suspect are innocent or incriminating; rather, the proper focus is whether the suspect's actions give rise to an inference that the informant is credible and that he obtained his information in a reliable manner. Contrary to the court's finding, there was some independent corroboration of the informant's tip.

 The circuit court found that nothing was presented as to the informant's veracity, reliability, or the basis of his knowledge. Once again, the court's finding is contradicted by the record. The corroborated details of the tip go to support the informant's veracity and reliability. (*Tisler*, 103 Ill. 2d at 251, 469 N.E.2d at 160.) Moreover, Agent Geurin stated that the informant had provided him with infor-

mation which had led to arrests and/or convictions on at least four prior occasions. The fact that the informant gave information concerning criminal activity on a fairly regular basis, and the fact that the information had been accurate in the past, could be considered in determining whether the informant had a basis for believing the substance in defendant's car was cannabis.

In short, none of the court's findings are supported by the record. The testimony of the troopers was uncontradicted. The circuit court did not make reference in its order to any lack of credibility on the part of the troopers. The findings of the court are against the manifest weight of the evidence. We will now address the question of whether there was probable cause, based upon information provided by the confidential informant, to arrest defendant for possession of cannabis.

The probability of criminal activity, rather than proof beyond a reasonable doubt, is the standard for determining whether probable cause is present. (*People v. Exline* (1983), 98 Ill. 2d 150, 456 N.E.2d 112.) A police officer may act upon information supplied by an informant; however, if the facts supplied by the informant are essential to a finding of probable cause, the tip must meet standards of reliability. *Tisler*, 103 Ill. 2d at 237, 469 N.E.2d at 153.

In *Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317, the supreme court rejected the "two-pronged test" for assessing the reliability of an informant's tip which had been expressed in *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509. The first or "basis of knowledge" prong of the two-pronged test required a magistrate to assess an informant's statements regarding how he learned the information he provided to police. The second or "veracity" prong required an evaluation of either the informant's past record of truthfulness or facts indicating that the present information was reliable. When a tip contained facts sufficient to meet only one of the two prongs, it could not be used, even where the facts which supported the one prong indicated a fair probability that the tip was reliable.

The supreme court's decision to replace the two-pronged test was prompted by the inflexible manner in which lower courts had applied the test. *Gates* held that probable cause analysis should no longer be directed into two independent channels. Under the totality-of-circumstances approach adopted in *Gates*, a deficiency with respect to one of the *Aguilar* requirements can be overcome "by a strong showing as to the other, or by some other indicia of reliability." *Gates*, 462 U.S. at 233, 76 L. Ed. 2d at 545, 103 S. Ct. at 2329.

■ While the State's showing as to the informant's basis of knowledge in this case was somewhat weak, the fact that he had given reliable information in the past, coupled with corroboration of the details he gave in this instance, more than offsets any deficiency as to his basis of knowledge for believing the substance in defendant's trunk was cannabis.

Reliability distinguishes this case from *People v. Ross* (1985), 133 Ill. App. 3d 66, 478 N.E.2d 575, upon which defendant relies. In *Ross*, an informant stated that he saw cocaine sales by a suspect, but did not indicate how he concluded that the substance was, in fact, cocaine. The tip was held insufficient to support a finding of probable cause. In *Ross*, the unidentified informant had not supplied any reliable information to police in the past. Thus, his reliability, the court found, had not been established. Moreover, there was insufficient independent corroboration of the tip to overcome deficiencies in areas of "basis of knowledge" and "reliability."

In *People v. Swift* (1978), 61 Ill. App. 3d 486, 378 N.E.2d 234, also cited by defendant, the testimony at the suppression hearing "wholly failed to meet the requirement of the second prong of the *Aguilar* test." (61 Ill. App. 3d at 492, 378 N.E.2d at 237.) Strict adherence to *Aguilar* requirements is no longer required. The focus of inquiry was different in *Swift* and that case is of little utility to a totality-of-circumstances analysis. For the same reason we find *People v. Sokolow* (1981), 97 Ill. App. 3d 1109, 424 N.E.2d 36, unpersuasive.

We believe the informant's tip in this case was stronger, under a totality-of-circumstances approach, than that at issue in *People v. Gailes* (1984), 128 Ill. App. 3d 339, 470 N.E.2d 1152. In *Gailes*, an unidentified informant called the police and told them that three or four black men had left East St. Louis for Terre Haute to pick up some cannabis. The caller gave a detailed description of the car involved and identified the men by name. According to the informant, the men were scheduled to return around 11 p.m. or midnight and would park in the 2100 block of Kansas Street. The police noticed a car matching the description given by the informant parked in that block around 11 that night. Around 12:45 a.m., the informant contacted the police and told them that the men had changed cars and were in a brown 1972 Pontiac Catalina. Police spotted a brown Catalina in front of 2136 Kansas Street around 1:25 a.m.

In *Gailes*, we found that the details of the tip together with the corroboration by the police gave rise to probable cause to support a stop and warrantless search. While the details provided in this case are, perhaps, less elaborate than were those in *Gailes*, the facts actu-

ally corroborated were essentially of the same character, *i.e.*, that a particular car was at a particular location at a given time. Moreover, in *Gailes* an unidentified caller provided the information. Nothing was known about that person. In this case, Geurin had worked with the informant in the past and the informant had supplied reliable information leading to arrests and/or convictions on at least four occasions.

The information supplied by the informant was sufficient to establish probable cause to arrest defendant for possession of cannabis. The trial court's findings to the contrary are manifestly erroneous. Since defendant's arrest was proper, the evidence seized and statements made were not tainted as the circuit court held.

■ Since the troopers had probable cause to believe cannabis was present in defendant's vehicle, they acted within the law when they searched the passenger compartment of defendant's vehicle. In fact, a search of the trunk would have been appropriate, with or without defendant's consent. Where police officers have probable cause to believe a vehicle is carrying contraband, they may conduct a search of the vehicle as thorough as a magistrate could authorize in a warrant. In such a case, the officers may search compartments and containers whose contents are not in plain view. *United States v. Ross* (1982), 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157. The cannabis seized from defendant's vehicle is admissible evidence.

■ Defendant's inculpatory statements are also admissible. The testimony adduced at the suppression hearing indicated that defendant was advised of his constitutional rights prior to giving statements admitting that he had grown the cannabis found in his trunk. Since the circuit court found that the defendant's statements were "tainted" as opposed to "involuntary," our finding that the arrest of defendant was supported by probable cause removes the taint and the statements are admissible.

For the foregoing reasons the order of the circuit court of Fayette County is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

HARRISON, P.J., and CALVO, J., concur.