THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ARMANDO GOMEZ, Defendant-Appellant.

Second District    No. 78-195

Opinion filed January 24, 1980.

James W. Reilley, of Reilley, Bell & Weinberg, of Chicago, for appellant.

Daniel D. Doyle, State's Attorney, of Rockford (Daniel Cain, Assistant State's Attorney, and Phyllis J. Perko and William L. Browers, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant was charged by information with unlawful possession of more than 30 grams of a substance containing cocaine, unlawful possession of more than 30 but not more than 500 grams of a substance containing cannabis and unlawful possession of a firearm. Defendant was found guilty on all three counts by jury verdict. He was sentenced to the Department of Corrections for 4 to 6 years on the charge of possession of more than 30 grams of a substance containing cocaine, to 1 year to 1 year and 1 day on the cannabis charge and to 30 days in the county jail on the firearms charge, all three sentences to run concurrently.

The defendant appeals on these grounds: (1) the court erred in denying his motion to quash the search warrant; (2) the court erred in admitting into evidence $1020 found in a pocket of a coat found in the bedroom closet of his apartment and, (3) the State did not prove beyond

a reasonable doubt that he had actual or constructive possession of the cocaine.

The facts of the case are essentially these: A special narcotics agent of the Illinois Department of Law Enforcement, assisted by four Rockford police officers, executed a search warrant at defendant's apartment in Rockford. Upon entering the apartment, defendant was observed standing in the living room and a man and woman were seated on the couch. A yellow plastic bowl was found on the counter in the kitchen part of the living room-kitchen. In the bowl was a rolled-up plastic bag containing a white powdery substance which was later tested and determined to contain cocaine. A pistol, pistol case and some ammunition was found in defendant's bedroom dresser drawer. One thousand twenty dollars was found in the pocket of defendant's coat in his bedroom closet. Also found on the closet floor was a brown paper bag inside of which was a clear plastic bag containing a substance later determined to be cannabis. The defendant was taken to the police department. The other man in the apartment was searched and released, but was not questioned regarding the items found in the apartment. The woman's purse was searched, but her person was not, nor was she questioned, and she was released. Defendant's motion for a directed verdict was denied.

Defendant testified he had a party earlier that evening, and he did not know who had brought in the container of cocaine that was found in the kitchen. Defendant denied both knowledge and control of the cocaine.

Defendant first challenges the trial court's denial of his motion to quash the search warrant. It is his contention that the underlying affidavit was factually inadequate to support a finding by an impartial magistrate that the informant was reliable as required in the second part of the well-known "two-pronged test" of *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, and its progeny, notably *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584. A brief recitation of the pertinent allegations contained in the affidavit is helpful here: Affiant, a Rockford police officer, working on narcotics investigations of the Rockford Cuban community with a special agent from the Illinois Bureau of Investigation, met with informant, a Cuban citizen of the community, at informant's request about two weeks before the affidavit was drafted. Informant had known defendant for at least a year, knew where he lived, knew what car he drove, had socialized with him at his home and elsewhere, and generally shared defendant's trust. Informant and defendant had mutual acquaintances, and informant knew of defendant's reputation as a drug dealer in heroin. Informant personally observed persons known to him to be drug users go to defendant's house

and each time defendant would go to his car trunk and obtain the requested heroin. Three or four weeks prior to their conversation, defendant had told informant he got the heroin he sells from "BeBe" who lives at a Carmen Street address in Chicago.

Affiant alleged informant was regularly employed, was married, had been a Cuban citizen of this country in good standing for the last seven years, and had no prior criminal record. It was further alleged that defendant had been observed by affiant and agent for a two-week period driving the car and frequenting the premises described by informant. They observed persons known to them as drug users enter the premises, whereupon defendant would go to his car, open and then close the trunk, return closed-fisted to the house, and the persons would leave within no more than 15 minutes after arriving. During the 48-hour period prior to execution of the warrant, affiant and agent observed a transaction between defendant and the driver of a car in which another man and a child were passengers. Defendant left his home and minutes later returned with a white paper bag. The other three persons left the house and, while the other man and the child stayed in the car, the driver reached into the rear passenger area of the car, re-entered the premises carrying a white plastic bag, and then left carrying nothing. The three then drove away. A check of the vehicle registration revealed the driver resided at 1442 W. Carmen Street in Chicago.

In his brief, defendant also relies on *United States v. Harris* (1971), 403 U.S. 573, 29 L. Ed. 2d 723, 91 S. Ct. 2075, in support of his contention that the affidavit in the case at bar was factually inadequate to establish why the affiant believed the informant was "both prudent and truthful." We feel defendant's reliance is misplaced. Preliminarily, we note that *Harris* specifically condemns the very sort of hypertechnicality which would defeat the sufficiency of an affidavit merely because it alleged only that an informant was " 'prudent' " with no mention of "truthful," or vice-versa. *United States v. Harris* (1971), 403 U.S. 573, 579, 29 L. Ed. 2d 723, 731, 91 S. Ct. 2075, 2080.

■■ ■ We construe *Harris* to mean, however, that the essential rule of construction which must be adhered to in affidavits of this type is that of supplying a *factual* basis for crediting the report of an unnamed informant. A magistrate supported with those facts is thereby afforded a sturdy basis upon which a warrant can reasonably be issued. In the case at bar, statements made by the informant were coupled with the personal observations of the affiant and the special agent, and in several pertinent areas the observations dove-tailed with the informant's statements, particularly with regard to defendant's actions whenever known drug users entered his house and the Carmen Street address. The commonality

of the informant's and affiant's observations adequately indicated that informant was reliable, and provided the basis upon which the magistrate could reasonably have issued the warrant.

We agree with the State's position that the informant's *prior* reliability need not be shown pursuant to the citizen-informer rule enunciated in *People v. Hester* (1968), 39 Ill. 2d 489, *cert. denied* (1970), 397 U.S. 660, 25 L. Ed. 2d 642, 90 S. Ct. 1408, but we do not state the rule so broadly as to say that the citizen-informer is simply presumed reliable. We strictly adhere to the view that in order to justify issuance of a search warrant, the affidavit must clearly demonstrate informant's *present* reliability. In the case at bar, we find the affiant's independent observations of the defendant, coupled with those of the informant's, provides ample indicia of informant's present reliability and meets—if not exceeds—the constitutional standards set forth in *Aguilar, Spinelli* and *Harris.*

■■ Defendant next challenges the trial court's admission into evidence of the $1020 found in the pocket of defendant's coat which was hanging in his bedroom closet. He testified he told the police the money belonged to his mother who was in Rockford on a visit from Puerto Rico. He contends the money had no probative value and that its introduction was prejudicial and harmful error because it created the inference that he was a drug dealer.

We are unable to agree with him that harmful error occurred as a result of the introduction of this evidence. It will never be known whether the members of the jury succumbed in fact to the inference which defendant feared. It is a certainty now, however, that Illinois case law fully supports the introduction of such evidence for its sole probative value of showing defendant's control over the apartment. (*People v. Galloway* (1963), 28 Ill. 2d 355.) Rarely are cases discovered which elucidate so well the matter being contended as *Galloway* does in this instance. It is similarly unusual when the judge's comments in ruling to admit the evidence over defendant's objection comport so precisely with the applicable case law that no conclusion except that he acted correctly might be deduced. In his ruling to admit the money into evidence, the trial court stated:

> " * * * I'll permit you to have it admitted for only one purpose * * * to show that the defendant * * * was, in fact, in possession of the contents of the apartment. Possession only. I will not let you [the prosecutor] draw any inferences in your argument that, by virtue of possessing a large sum of money, he therefore was any more likely to be engaged in having the possession of a controlled substance. * * * I will not let you use it to attempt to have the jury draw the inference that, because he had that particular sum of

money, he was therefore more likely than not to be engaged in the drug trade or anything like that."

This definitive statement and the rule announced in *Galloway* convince us that no error occurred when the money was admitted into evidence and the defendant was not unduly prejudiced thereby.

Defendant's final challenge is that the State never proved beyond a reasonable doubt that he had actual or constructive possession of the cocaine and cites *People v. Huth* (1977), 45 Ill. App. 3d 910, in main support thereof. The State resists this challenge with citations to two Illinois Supreme Court cases, *People v. Embry* (1960), 20 Ill. 2d 331 and *People v. Nettles* (1961), 23 Ill. 2d 306, and by distinguishing *Huth*.

● 4 In order to support a conviction for unlawful possession of narcotics, the State must establish knowledge on the part of the defendant of the presence of narcotics and must also establish that the narcotics were in the immediate and exclusive control of the defendant. (*People v. Mack* (1957), 12 Ill. 2d 151.) In *Embry*, seven packages of narcotics were found under some towels in the bathroom. Defendant and five other persons were in the apartment at the time; defendant admitted it was his apartment and that he paid the rent. Neither defendant nor any of the five others admitted nor denied ownership of the packages. In *Nettles*, 30 small packages of narcotics were found in a paper bag behind the entrance door of an apartment where defendant and a woman lived as man and wife. There were two other men besides defendant and the woman present at the time of the discovery of the narcotics. Defendant testified he did not rent the apartment but merely kept his clothes there. In both cases the court affirmed the defendant's conviction. The supreme court stated in *Nettles*, at pages 308-09, "that where narcotics are found on the premises under the control of defendant, this fact, in and of itself, gives rise to an inference of knowledge and possession by him which may be sufficient to sustain a conviction for unlawful possession of narcotics, absent other facts and circumstances which might leave in the mind of the jury * * * a reasonable doubt as to his guilt." Additionally, we note that possession may be either actual or constructive. (*People v. Matthews* (1959), 18 Ill. 2d 164.) We find these cases persuasive authority in the case at bar. The evidence adduced at trial clearly indicated the apartment was under the control of the defendant, thus giving rise to the *Nettles* inference that defendant had both knowledge and possession of the cocaine. The presence of two other persons in the apartment was not a circumstance which created in the mind of the jury a reasonable doubt as to defendant's guilt, and we concur with its verdict.

*Huth* is eminently distinguishable from the case at bar in that the inference which is raised as a result of a defendant's dominion and control over the area in which the illegal narcotics were found was inapplicable in

*Huth* where the defendant was merely a passenger in a car which he neither owned nor was driving at the time of the arrest.

The judgment of the circuit court of Winnebago County is affirmed.

Judgment affirmed.

SEIDENFELD and WOODWARD, JJ., concur.