THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
LANCE GATES *et al.*, Defendants-Appellees.

Second District   No. 78-570

Opinion filed April 1, 1980.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Robert L. Thompson, Assistant State's Attorney, of counsel), for the People.

James W. Reilley, of Chicago, for appellees.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

The State appeals an order entered by the Circuit Court of Du Page County which quashed a search warrant and suppressed the evidence seized pursuant to the authority of the warrant. At issue is whether the warrant was sufficient under the standards set forth in *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, and *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584. We affirm.

The facts are straightforward. On May 3, 1978, the Bloomingdale Police Department received a handwritten, anonymous letter which had no return address. The letter recited as follows:

"This letter is to inform you that you have a couple in your town who strictly make their living on selling drugs. They are Sue and Lance Gates, they live on Greenway, off Bloomingdale Road, in the condominiums. Most of their buys are done in Florida. Sue his wife drives their car to Florida, where she leaves it to be loaded up with drugs, than flys [*sic*] back after she drops the car off in Florida. May 3, she is driving down there again and Lance will be flying down in a few days to drive it back. At the time Lance drives the car back he has the trunk loaded with over $100,000.00 in drugs.

Presently they have over $100,000 worth of drugs in their basement.

They brag about the fact that they never have to work, and make their entire living on pushers.

I guarentee [*sic*] if you watch them carefully you will make a big catch. They are friends with some big drug dealers, who visit their house often.

Lance and Sue Gates
Greenway
In Condominiums."

On the same day the letter was received, Detective Charles Mader of the Bloomingdale police department made an inquiry to the Secretary of State's office regarding the driver's license of one Lance Gates. The computer reply stated that an Illinois Drivers License had been issued to a Lance B. Gates, whose address was listed at 209 D, Dartmouth Drive, Bloomingdale, Illinois. His physical description was given as follows:

Sex—Male
Date of Birth—July 13, 1947
Height—5'11"
Weight—220 pounds
Hair—Brown
Eyes—Brown.

Later the same day, Detective Mader contacted a confidential informant. Detective Mader had known this informant for approximately two years during which time the informant had provided the detective with information which resulted in seven criminal convictions. This informant told the detective that Lance B. Gates' current address was 198 B. Greenway Drive, Bloomingdale, Illinois.

Detective Mader then called Officer Ott of the Chicago police department who at that time was assigned to O'Hare Airport. Officer Ott reviewed flight information and stated that L. Gates, phone number 980-8427, was scheduled to depart Chicago-O'Hare on May 5, 1978, on Eastern Airlines Flight 245, departing at 4:15 p.m. The flight was scheduled from Chicago to Atlanta and then to West Palm Beach, Florida.

Detective Mader then told the radio operator at the Bloomingdale police department to call the security office of the Illinois Bell Telephone Company. The radio operator was told that telephone number 980-8427 was a nonpublished number issued to Lance B. Gates whose address is 189 B Greenway Drive, Bloomingdale, Illinois.

On May 5, 1978, Detective Mader was telephoned by Agent William Morely of the Drug Enforcement Agency. He told Mader that, pursuant to a prior arrangement with the detective, he had maintained a

surveillance on all passengers boarding Flight 245. He told Mader that a person matching the description of and using the name Lance Gates had boarded the flight.

Agent Morely called Mader the next day and told him that an agent in Florida had just completed a surveillance on Lance Gates in West Palm Beach. This Florida agent told Morely that he observed the defendant remain in the airport for approximately one hour after his arrival. He next saw him take a taxi which the agent followed to the Holiday Inn in West Palm Beach. The defendant went to a room which was registered to Susan Gates. At approximately 7 a.m. on May 6, 1978, the Florida agent saw Lance Gates and a female leave the room, go to the parking lot, and get in a red vinyl-over-gray Mercury bearing Illinois license plates RS8437. The Florida agent followed this Mercury northbound to an interstate which is commonly used by travelers to the Chicago area. At that point the surveillance was terminated.

Agent Morely also told Detective Mader that the license plate RS8437 was registered to the defendant but for a 1975 Hornet station wagon. Finally Agent Morely advised the Detective that the approximate driving time from West Palm Beach to Bloomingdale is 21-23 hours.

A complaint for search warrant was prepared and presented for approval to an associate judge. The complaint attached an affidavit signed by Detective Mader, which recited substantially the same facts as set forth above, and included a copy of the anonymous note as an attachment to the affidavit.[1] The request for the issuance of the warrant was approved, and a search warrant was issued authorizing police to search the person of both defendants, their condominium located on Greenway in Bloomingdale, and the gray Mercury driven by Lance Gates.

On May 7, 1978, at approximately 5:15 a.m., Lance and Susan Gates arrived at the residence of 198 B Greenway Drive, in Bloomingdale. Pursuant to the warrant, the police searched the car and found "seven large burlap bundles of cannabis" weighing in excess of 400 pounds. The residence was then searched, and police discovered numerous rifles, a handgun, a green garbage can containing approximately 20 pounds of cannabis, three-fourths of a bale of cannabis, numerous baggies and hand-rolled cigarettes containing cannabis, and assorted weighing devices.

Both defendants were arrested and later were indicted on various narcotics and firearms charges. Prior to trial, a motion to quash the arrest and suppress evidence was filed on behalf of both defendants. The basis of the defendants' motion was that the warrant failed to comply with the requirements of *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 723, 84 S. Ct. 1509, in that the author of the anonymous letter was not "reliable" and

---

[1] The text of the affidavit is set out in full in the appendix.

that there was no showing that his or her information was obtained in a reliable manner. After a hearing, the trial court granted the defendants' motion to quash and suppress, and the State appeals.

■■ The fourth amendment of the United States Constitution, as made applicable to the States by the fourteenth amendment, requires that search warrants be issued only upon a showing of "probable cause." Whenever a search warrant is sought on the basis of information supplied by an anonymous informant, it is necessary that the judge or magistrate issuing the warrant be provided with sufficient facts and circumstances from which he can determine the reliability of the informer and the accuracy of his present information so that the constitutional requirement of probable cause may be satisfied. *People v. Thomas* (1975), 62 Ill. 2d 375, 378, 342 N.E.2d 383, 384, *People v. Isenberg* (1977), 52 Ill. App. 3d 426, 429, 367 N.E.2d 364.

■■ The leading case of *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, set forth a two-prong test to be applied by a judge or magistrate in testing the sufficiency of an affidavit filed in support of the issuance of a search warrant: first, the judge must be informed of some of the underlying circumstances from which the informant concluded that the defendants were involved in criminal activity (the "basis of knowledge" prong); and secondly, the judge must be informed of some of the underlying circumstances from which the affiant concluded that the informer or his information was worthy of belief (the "veracity" prong). The veracity prong of the *Aguilar* test may be satisfied by showing either that the informant, whose identity need not be disclosed, is "credible" (the "credibility" spur) or that his information is "reliable" (the "reliability" spur). *Aguilar v. Texas* (1964), 378 U.S. 108, 114-15, 12 L. Ed. 2d 723, 729, 84 S. Ct. 1509, 1514.

Pursuant to the test set forth in *Aguilar*, the first question we must address in this case is whether the affidavit was sufficient to inform the issuing judge of the underlying circumstances from which the anonymous informant reached his conclusions that defendants were engaged in criminal conduct. The affidavit attached to the complaint for search warrant does not reveal the manner in which the anonymous informer obtained or gathered his information. (*Cf. People v. Gomez* (1980), 80 Ill. App. 3d 668, 399 N.E.2d 1030 (informant had personal knowledge that crime had been committed); *People v. Swift* (1978), 61 Ill. App. 3d 486, 378 N.E.2d 234 (informer was requested by defendant to participate in crime).) Thus, our inquiry turns to whether the judge could reasonably infer that the information was gained in a reliable fashion because of the great amount of detail supplied by the informer. (*Spinelli v. United States* (1969), 393 U.S. 410, 417, 21 L. Ed. 2d 637, 644, 89 S. Ct. 584, 589.) In *Spinelli*, the Supreme Court utilized the detail provided by the informant

in *Draper v. United States* (1959), 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329, as an example of the detail required to satisfy the basis of knowledge prong of the *Aguilar* test.

■ Using *Draper* as a standard, we are of the opinion that the information supplied by the anonymous informer does not contain sufficient detail to allow the issuing judge to reasonably infer that the informer had obtained his information in a reliable way. The anonymous letter contains no more than general allegations that defendants were involved in narcotics sales. Although the anonymous informer did state that the Gateses would soon drive to Florida and return with a load of drugs in their car, no details regarding this trip were set forth in the letter. These general allegations fall far short of the specifics necessary for a judge to properly infer that the anonymous informer had gathered his information in a reliable way. Nor could the judge reasonably assume that the anonymous informer had personal knowledge on the basis of the statements set forth in the anonymous letter. In contrast to the case at bar, the informer in *Draper* supplied police with a detailed physical description of the accused, the time and date of his arrival in Denver by train, and a description of the clothes he would be wearing. The informer also stated that the accused had a habit of walking very fast. (*Draper*, 358 U.S. 307, 309-10, 3 L. Ed. 2d 327, 330, 79 S. Ct. 329, 331.) When confronted with such detail, a judge could reasonably infer that the informer either had personal knowledge of the transaction or had obtained his information in a reliable way. The informer in the instant case set forth few details, however, and he may have obtained his information through rumor or through another unreliable method. Hence, the affidavit fails to meet the basis-of-knowledge requirements set forth in *Spinelli* and *Aguilar*.

■ The State argues that there is "substantial basis" for crediting the information supplied by the anonymous informant because the allegations set forth in the handwritten letter were fully corroborated by other independent sources. We cannot agree. Partial corroboration of an informant's story may show his information to be "reliable;" however, such corroboration only satisfies the second prong of the *Aguilar* test, *i.e.*, the veracity prong. Corroboration does not establish that the informer obtained his information in a reliable manner. (1 La Fave, Law of Search and Seizure: A Treatise on the Fourth Amendment §3.3 (1978).) As stated by the court in the well-reasoned case of *Stanley v. State* (1974), 19 Md. App. 507, 531-32, 313 A.2d 847, 861-62:

> "[T]he 'independent verification' technique cannot repair a defect in the 'basis of knowledge' prong. *Verifying the truth of part of a story does nothing either to ascertain the story's source or to check the informant's perhaps invalid conclusions.* * * *

An informant who does not speak from personal knowledge may well be passing on an amalgam of underworld rumor and barroom gossip. If that be true, the verification of one contributing rumor would do nothing for the 'veracity' of other contributing rumors. An informant may have * * * then received incriminating information from a third party lending inculpatory color to those observations. Merely verifying the informant's innocuous observations does nothing to verify the crucial third party who supplied the damning catalyst." (Emphasis ours.) Accord *United States v. Hamilton* (9th Cir. 1974), 490 F.2d 598; *Garner v. State* (Del. 1973), 314 A.2d 908.

Were we to accept the State's argument, we would permit government invasion of the privacy of persons solely on the basis of anonymous tips, made perhaps out of spite or based upon unsubstantiated rumor, merely because innocent details have been verified by the observations of a police officer. Although some Federal and State courts have accepted the position advanced by the State in this case (see, *e.g., United States v. Tuley* (5th Cir. 1977), 546 F.2d 1264 (over dissent); *United States v. Myers* (D.C. Cir. 1976), 538 F.2d 424 (over dissent); *Horton v. State* (1977), 262 Ark. 211, 555 S.W.2d 226; *State v. Gilbert* (1976), 24 Or. App. 907, 547 P.2d 632), we believe that neither the theory nor the cases are sound, and we refuse to follow them.

In view of our determination that the affidavit failed to satisfy the basis-of-knowledge prong of the *Aguilar* test, we need not address any other issues in this case. For the reasons stated above, the order of the Circuit Court of Du Page County is affirmed.

Affirmed.

SEIDENFELD and NASH, JJ., concur.

## APPENDIX

Affidavit filed in support of complaint for search warrant:

"I, CHARLES J. MADER, am a detective employed by the Bloomingdale Police Department, Du Page County, Illinois. I have been so employed for the past five years. On May 3, 1978, I received a letter sent by an unknown citizen to the Bloomingdale Police Department. I received the letter and the envelope in which it was sent from Chief Patrick J. McMahon. A copy of the letter and a transmittal envelope are attached hereto and incorporated herein by reference.

On May 3, 1978, I directed a Bloomingdale Police Department

radio operator to make a SOUNDEX drivers license name inquiry with the Illinois Secretary of State, Springfield, Illinois to determine whether they had any record of a LANCE GATES residing in Bloomingdale, Illinois. The SOUNDEX response established that one LANCE B. GATES was issued an Illinois drivers license which listed his address as 209 D. Dartmouth, Bloomingdale, Illinois. A copy of the response sent by the Secretary of State is attached hereto and incorporated herein by reference.

On May 3, 1978, I contacted a confidential informant known to me for the past two year period, I have received information from this person several dozen times, resulting in seven criminal arrests with convictions in all cases. This confidential informant reviewed certain financial records available to him and told me that he located one LANCE B. GATES residing at 198 B. Greenway Drive, Bloomingdale, Illinois. He also informed me that GATES' previous address was 209 D. Dartmouth, Bloomingdale.

CONTINUED ON PAGE 2

COMPLAINT FOR SEARCH WARRANT NUMBER S 1603
CONTINUATION OF AFFIDAVIT OF CHARLES J. MADER PAGE TWO

On May 3, 1978, I contacted Officer Ott of the Chicago Police Department at O'Hare Airport. Officer Ott checked certain flight information available to him and told me that one L. GATES, phone number 980-8427, was registered on Eastern Airlines Flight number 245, scheduled to depart O'Hare on 4:15 P.M. on May 5, 1978. Officer Ott told me that Flight 245 travels from Chicago to Atlanta and then to West Palm Beach, Florida.

I then directed the radio operator to contact the Security Office of Illinois Bell Telephone Company and was told by the radio operator that 980-8427 was a nonpublished phone number issued to LANCE GATES at 189 B. Greenway Drive, Bloomingdale, Illinois.

On May 5, 1978, I was contacted by Agent William Morely of the Drug Enforcement Administration. He state that, pursuant to prior arrangement between us, he had maintained a surveillance on all passengers boarding Eastern Airlines Flight number 245. He stated further that in individual using the name LANCE GATES and matching the physical description furnished by Secretary of State in the attached message boarded Flight 245 bound for Florida.

On May 6, 1978, Agent Morely contacted me and said that Drug Enforcement Administration agents in Florida had just completed

a surveillance of LANCE GATES in West Palm Beach, Florida. He told me that the Federal agents in Florida observed:

1. GATES arrive in West Palm Beach, Florida via Eastern Flight Number 245 and remain in the airport for one hour before taking a taxi to the West Palm Beach Holiday Inn;

2. The room he entered was registered to one SUSAN GATES;

3. At 7:00 AM May 6, 1978, LANCE GATES and a female left the Holiday Inn Room registered to SUSAN GATES, and entered a red vinyl over gray Mercury bearing Illinois 1978 license RS 8437;

4. LANCE GATES and the female left the West Palm Beach area driving the Mercury northbound on that interstate highway commonly used by travelers to the Chicago area.

Agent Morely further told me that a check of the records of the Illinois Secretary of State revealed that license RS 8437 registers to LANCE B. GATES on a 1975 Hornet station wagon.

Agent Morely also told me that the driving time from West Palm Beach, Florida to Bloomingdale, Illinois is approximately 21-23 hours.

> /S/ DET. CHARLES J. MADER
> COMPLAINANT"

PAGE TWO OF TWO PAGES

> "S/SUBSCRIBED AND SWORN TO
> BEFORE ME ON May 6, 1978
>                    S. K. LEWIS
>                    Assoc. Judge."