THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
JERRY L. DAVIS, Defendant-Appellee.

Second District    No. 79-298

Opinion filed July 14, 1980.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Robert L. Thompson, Assistant State's Attorney, of counsel), for the People.

No brief filed for appellee.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

The State appeals from an order of the Circuit Court of Du Page County suppressing a statement attributed to defendant, Jerry L. Davis. The statement was part of the State's evidence in the prosecution of an

information charging defendant with two counts each of theft and forgery. The court ruled that the evidence which provided the basis for defendant's arrest was illegally obtained, as were the statements thereafter made while defendant was in custody.

At 11 a.m. on November 13, 1977, Detective John Poss of the Schaumburg Police Department received a telephone call from an informant relating that defendant was then in the process of manufacturing a silencer at the E-Z Grinding Company in Schaumburg. About a month previously, the informant had told Poss that defendant periodically made a silencer at the grinding company, and Poss had asked to be told if it happened again. After completing the November 13 telephone call, Poss and a second detective proceeded to the grinding company, arriving at about 12:20 p.m. A car was found parked behind the building, and a radio check disclosed it to be registered to defendant. The detectives had no warrant, but nevertheless entered through the main door of the building, which was closed but unlocked. It was a Sunday afternoon, and only defendant and an individual named Roy Black were present. Defendant worked part-time for the grinding company on a consignment basis. Defendant and Black were at a work bench across the room when the detectives entered. As he entered, Detective Poss observed defendant make a quick motion as if to drop something on the table, and Poss heard something strike it. Poss testified at the hearing on the motion to suppress that he found a closed but unlocked briefcase on the work bench. Defendant testified, on the other hand, that the briefcase was 15 feet from his place at the work bench and was examined by Poss without permission. The detectives then conducted a pat-down of Black and the defendant. Poss opened the case and found an automatic pistol and a silencer inside. Poss then placed defendant under arrest. Defendant testified that the briefcase belonged to Roy Black, although he admitted using it.

Defendant was taken to the Schaumburg police station, where at 4 o'clock he was questioned by agents of the Federal Bureau of Alcohol, Tobacco and Firearms concerning a possible weapons charge. Defendant testified that he was read *Miranda* rights prior to this questioning, although the details of that advisement were not made a matter of record. At the conclusion of this interview, defendant said he was questioned by Detective Thomas Fries of the Schaumburg police department concerning the forgery and theft charges. Fries, however, testified that he questioned defendant prior to the arrival of the Federal agents. In either event, Fries testified that he had advised defendant fully in compliance with *Miranda* prior to questioning, and that defendant had indicated that he understood his rights and desired to waive them. Defendant denied having been given *Miranda* warnings until after Fries had taken and

typed a statement from him. Defendant agreed that at that latter point he was given the warnings, initialed a form containing a rights advisement, and executed a written waiver.

After hearing the above-summarized testimony, the trial court suppressed the statement made by the defendant to Officer Fries concerning the forgery and theft charges.[1] The court found that the defendant had a right to an expectation of privacy in the factory, that there was not probable cause for the police entry, that the subsequent arrest and search were illegal, and that the statement in question was the result of an illegal arrest. The court also found that there were no exigent circumstances shown to avoid the search warrant requirements.

Three issues are raised by this appeal: (1) whether defendant had standing to contest the police entry onto his employer's premise, (2) whether the police acted illegally in entering the factory without a warrant, and (3) whether the defendant's statements to the police should be considered "the fruit of the poisonous tree."

## I.

It has long been recognized that fourth amendment rights are personal and may not be asserted vicariously. Traditional concepts of standing were phrased in terms of requirements that the moving party have a proprietary or possessory interest in the premises searched (*Brown v. United States* (1973), 411 U.S. 223, 36 L. Ed. 2d 208, 93 S. Ct. 1565), that he have been lawfully present on the premises, or that the same possession needed to establish standing is an essential element of the offense charged (*Jones v. United States* (1960), 362 U.S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725). (See also, *People v. Borchelt* (1977), 46 Ill. App. 3d 286, 288, 360 N.E.2d 1187, 1189.) The concept of standing was revised by the Supreme Court in *Rakas v. Illinois* (1978), 439 U.S. 128, 58 L. Ed. 2d 387, 99 S. Ct. 421, which concluded that the question of standing is more properly subsumed under, and invariably intertwined with, substantive fourth amendment doctrine. Under *Rakas*, the pertinent question is whether the moving party is asserting his own legal rights and interests rather than basing his claim for relief upon the rights of third parties. While recognizing that one's legitimate presence on the searched premises was relevant to the question of whether fourth amendment rights had been infringed, this factor alone was not deemed controlling. *Rakas* held that one could claim the protection of the fourth amendment with respect to a government invasion into an area in which he had a legitimate expectation of privacy. The holding in *Rakas* was foreshadowed by *Mancusi v. DeForte* (1968), 392 U.S. 364, 20 L. Ed. 2d 1154, 88 S. Ct. 2120, which, with respect to business premises (a union local office) focused on

---

[1] The unrelated weapons charge is not the subject matter of this appeal.

whether the area searched was one in which there was a reasonable expectation of freedom from governmental intrusion.

■■ In the case at bar, the State points out that defendant was a part-time employee who worked at the grinding company on a consignment basis. Moreover, the door to the grinding company was unlocked at the time the police made their entry. The State contends that a person in such a situation could not have had a legitimate expectation of privacy in the premises and may therefore not challenge a police entry. However, *Mancusi v. DeForte* made clear that a person may have an expectation of privacy in an area where he works. *Mancusi* involved the search of an office, consisting of one large room, which the defendant shared with several other union officials. Although the defendant shared the premises with others and it was not claimed that the items seized were taken from an area reserved exclusively for his personal use, the court took the view that he nonetheless could have reasonably expected that only his co-workers and their guests would enter the office, and that only persons authorized by the union would go through the items contained therein. In the instant case, as was true in *Mancusi*, the business premises entered consisted of a large open area not reserved exclusively for any given employee. *Rakas* and *Mancusi* confer a right to raise a fourth amendment challenge where there was a reasonable expectation of privacy against governmental intrusion. Thus, the fact that defendant might have expected co-workers to enter the building does not deprive him of a basis to challenge a police entry. A different result might follow if entry into the premises had been so commonplace or inevitable that defendant must necessarily have expected to be observed by certain third persons or by members of the public in general. (See *People v. Heflin* (1976), 40 Ill. App. 3d 635, 351 N.E.2d 594, *aff'd* (1978), 71 Ill. 2d 525, 376 N.E.2d 1367, *cert. denied* (1979), 439 U.S. 1074, 59 L. Ed. 2d 41, 99 S. Ct. 848.) In sum, we conclude that the defendant had standing to challenge the legality of the police entry.

## II.

Having concluded that the defendant had standing, we now turn to the merits of the issues raised by the defendant's assertion that his fourth amendment rights were violated. The State first argues that under our holding in *People v. Lerch* (1966), 77 Ill. App. 2d 151, 221 N.E.2d 664 (abstract), the police entry was not a "search" bringing into play fourth amendment rights. In our view, however, the *Lerch* situation is clearly distinguishable, as that case involved a police entry into a gas station, a business providing services to the public and where frequent public entry could be anticipated. A grinding company, such as that involved in the instant case, would generally not for reasons of safety permit general

access to the public. The State also argues that the search of the defendant was a proper "frisk" of the defendant as the "furtive" movement of the defendant, in conjunction with the nature of the investigation the police were making, gave them a reasonable suspicion to make a "protective search" of the immediate area. (See Ill. Rev. Stat. 1977, ch. 38, par. 108—1.01.) However, such a protective search can only be made following an investigatory stop in a public place. (See Ill. Rev. Stat. 1977, ch. 38, par. 107—14.) Moreover, this argument ignores the fact that the initial entry of the premises may have been illegal thus tainting the subsequent search. This issue of the "fruits of the poisonous tree" is discussed in part III, below.

■■■ Having disposed of the State's initial contentions, we conclude that to be lawful the detectives' entry into the grinding company had to be based on probable cause and sufficient exigent circumstances to excuse their obtaining a warrant. (*People v. Grant* (1974), 57 Ill. 2d 264, 312 N.E.2d 276.) Resolution of the probable cause question requires analysis of this case under the standards set out in *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509. In *Aguilar*, the Supreme Court set out the following requirements for an affidavit filed in support of a request for a search warrant: first, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the defendant was involved in criminal activity; and second, the magistrate must be informed of some of the underlying circumstances from which the affiant concluded that the informer or his information was worthy of his belief. Turning first to the "basis of knowledge" prong of the *Aguilar* test, we conclude that there was insufficient information available to the police to satisfy this requirement. The detectives in this case were supplied with defendant's name and an allegation that he was then engaged in making a silencer at an identified location. There was no indication of how the informant had come by this information. Such a deficiency might have been cured if there had been a sufficient amount of detail supplied by the informer so that it could have been reasonably inferred that the information was gained in a reliable fashion. (*Spinelli v. United States* (1968), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584.) However, as in the recent case of *People v. Gates* (1980), 82 Ill. App. 3d 749, 403 N.E.2d 77, the informant's information in the instant case contained no more than a general allegation of criminal activity. No details were provided concerning the nature of defendant's activity, and the sole corroboration of the informant's information (the presence of defendant's car outside the grinding company) was too sketchy to establish its reliability.

The State asserts that the second prong of the *Aguilar* test was satisfied because the information provided was obtained from a citizen

informant. Citing *People v. Hoffman* (1970), 45 Ill. 2d 221, 258 N.E.2d 326, the State contends that no showing of prior reliability is necessary before the police may rely on information provided by an ordinary citizen. However, it does not affirmatively appear in the record that the informant in question should fall within the ambit of the citizen-informer rule. While Detective Poss testified that he had never paid the informer for providing information or rendered him other services, he stopped short of establishing that the unnamed informant had no criminal record, had not been supplying information over a long period of time or might otherwise have been considered an ordinary citizen. In the absence of such facts or any other information to establish the informant's credibility or reliability, the second prong of the *Aguilar* test was also not satisfied.

Moreover, there were no exigent circumstances in this case which would justify the detectives' entry into the grinding company without a warrant. In *Vale v. Louisiana* (1970), 399 U.S. 30, 26 L. Ed. 2d 409, 90 S. Ct. 1969, the Supreme Court set out a number of factors which in that case resulted in a conclusion that no exigent circumstances were present: (1) the officers were not responding to an emergency; (2) they were not in hot pursuit of a fleeing felon; (3) the goods ultimately seized were not in the process of destruction; (4) the goods were not about to be removed from the jurisdiction; (5) the officers had time to obtain two arrest warrants; (6) the defendant's address was known to the authorities. In the case at bar, all but the latter two circumstances were present. While it was conceivable that the silencer might have been removed from the factory, nothing known to the detectives prior to their search, or learned thereafter, suggested that defendant's departure was imminent. The detectives' information that defendant was manufacturing contraband which he might thereafter have removed does not automatically give rise to exigent circumstances justifying a warrantless entry. The trial court specifically found that exigent circumstances were not present, and we cannot say that this finding is against the manifest weight of the evidence. In sum, we conclude that the initial police entry of the premises was unlawful.

### III.

■ The final issue is whether in light of the illegality of the initial entry, the subsequent statements to the police were properly suppressed as the "fruit of the poisonous tree." (*Wong Sun v. United States* (1963), 371 U.S. 471, 9 L. Ed. 2d 441, 83 S. Ct. 407.) Evidence cannot be characterized as "fruit of the poisonous tree" merely because it would not have come to light "but for" the illegal actions of the police. Rather, the test to be applied is whether the evidence has been obtained by an exploitation of the illegality or by means sufficiently distinguishable to be purged of the

primary taint. In determining whether there has been an exploitation of the illegality, the purpose and flagrancy of the official misconduct are prime considerations. (*People v. Price* (1979), 76 Ill. App. 3d 613, 394 N.E.2d 1256.) Other factors to be considered are the giving of *Miranda* warnings, the temporal proximity of the arrest and the confession, and the presence of any intervening circumstances. *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254.

The most recent expression of our supreme court on this issue is *People v. Gabbard* (1979), 78 Ill. 2d 88, 398 N.E.2d 574, a case in which the statement was held to be admissible. In *Gabbard*, as in the instant case, the interrogation in issue involved an offense other than that for which the defendant was arrested. However, in our view, the *Gabbard* decision is clearly distinguishable on a number of grounds. First, the statement in that case was taken almost 12 hours after the arrest. Also in *Gabbard* the court reasoned that since the statement was taken by a police agency which was not the arresting agency, excluding the evidence would not serve to deter improper police conduct. In the instant case, while Federal agents questioned the defendant about the unrelated firearms charge, Schaumburg police arrested, questioned, and obtained the statement at issue from the defendant.

The most significant difference between the instant case and *Gabbard* involves the key factor of intervening circumstances. In *Gabbard* the court specifically found that the defendant's statements were prompted by the intervening events of being shown a composite sketch of the suspect and being identified in a lineup. (78 Ill. 2d 88, 99, 398 N.E.2d 574, 579.) In the instant case there was no such intervening circumstance.

The final distinguishing factor between *Gabbard* and the instant case involves the standard of review. A suppression order will only be reversed if the trial court's ruling was manifestly erroneous. (*People v. Van Note* (1978), 63 Ill. App. 3d 53, 379 N.E.2d 834.) In *Gabbard*, our supreme court was affirming the decision to admit the statements. In the instant case, the trial court suppressed the defendant's statements. As discussed above, we believe the trial court's order was supported by ample evidence, and therefore we affirm.

Affirmed.

SEIDENFELD, P. J., and VAN DEUSEN, J., concur.